242 N.J. Super. 5 (1990)
576 A.2d 1
JOSEPH AND PAULINE CATTON, PLAINTIFFS-APPELLANTS,
v.
THE NEW JERSEY FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-RESPONDENT, AND STATE FARM INSURANCE COMPANIES, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 15, 1990.
Decided April 10, 1990.
*6 Before Judges SHEBELL and KEEFE.
Marmorstein, Abrams & Solomon, attorney for appellants (Robert Joel Marmorstein, on the brief).
Rooney, Peduto & Rooney, attorneys for respondent, The New Jersey Full Insurance Underwriting Association (Charles A. Rooney, Jr., on the brief).
PER CURIAM.
Plaintiffs Joseph and Pauline Catton appeal from the entry of summary judgment in favor of the defendant New Jersey Full Insurance Underwriting Association, commonly referred to as the JUA. The issue presented on appeal is whether the JUA may rescind an automobile insurance policy after erroneously extending coverage to an "unqualified applicant" under N.J.S.A. 17:30E-3(m) when that applicant did not make any misrepresentations in obtaining the contested policy. We hold that the summary judgment was mistakenly entered and reversed the judgment under review.
Despite the rather truncated facts and narrow issue presented to the Law Division judge, both parties have submitted documents containing factual information not before the *7 trial court. Such conduct is in violation of appellate rules. R. 2:5-4(a); Middle Dep't Insp. Agency v. Home Ins. Co., 154 N.J. Super. 49, 56, 380 A.2d 1165 (App.Div. 1977), certif. den. 76 N.J. 234, 386 A.2d 858 (1978). However, because we find it necessary to reverse and remand the matter for further proceedings, we will utilize the additional material since it is largely immaterial to the outcome of the case and will provide guidance to the trial court on remand.
These are the facts. On December 19, 1984, plaintiff Joseph Catton entered into a lease agreement with Braman Cadillac Leasing Corp. of Miami, Florida, for a 1985 Porsche. At the time, plaintiffs were insured under a JUA policy issued by State Farm Insurance Companies (State Farm) on June 5, 1984 covering a 1983 Audi owned by plaintiffs. The policy indicated that plaintiffs lived in Oakhurst, New Jersey. Plaintiffs requested that the Porsche be added to the policy through their regular broker, R.S.A. Brokerage in Brooklyn, New York. The Porsche was not registered in New Jersey nor, apparently, was plaintiff Joseph Catton a licensed New Jersey driver. The declaration sheet of the policy was amended as requested and, thereafter, the policy was renewed in June, 1985.
On or about October 29, 1985 the Porsche was stolen from the driveway of plaintiffs' home located in Oakhurst. A report of the theft was filed with the Ocean Township Police Department. Thereafter, plaintiffs submitted a claim to State Farm for the loss of the Porsche. State Farm refused payment, claiming that plaintiffs were ineligible for coverage pursuant to N.J.S.A. 17:30E-3(m), which requires, among other things, that the insured automobile be registered in New Jersey. Thereafter, State Farm rescinded the policy and issued a check to plaintiffs for the amount of the premium.
In response to State Farm's refusal to satisfy the claim, plaintiffs filed this action. Prior to trial, State Farm moved for and was granted summary judgment. Plaintiffs do not challenge that decision. In due course, the case was assigned to a *8 judge for trial. Rather than proceed to a plenary hearing, the parties, at JUA's request, stipulated certain facts and presented a narrow issue to the trial judge for decision by way of summary judgment motion.
The parties stipulated that the Porsche was not registered in New Jersey and, for the purpose of the motion only, that there were no misrepresentations appearing in plaintiffs' application for insurance coverage. The precise issue presented to the trial judge, as contained in the summary judgment order executed by him, was "whether the defendant has the right to rescind the insurance policy rather than cancel it on the basis that the plaintiffs are not qualified applicants for insurance under the provision of N.J.S. 17:30E-1 et seq. (New Jersey Automobile Full Insurance Availability Act), in that it has been stipulated that plaintiffs' vehicle was not registered in the State of New Jersey and for purposes of this motion the court makes no finding as to any misrepresentation as to the registration appearing in the plaintiff's application for insurance." Based on that stipulation and the legal arguments presented, the trial judge upheld defendant's right to rescind the policy and dismissed plaintiffs' complaint with prejudice and without costs. This appeal followed.
Plaintiffs contend on appeal that, because they made no misrepresentations in obtaining the policy, they are entitled to coverage. JUA contends that it is irrelevant that plaintiffs made no factual misrepresentations in order to procure the insurance. It contends that under N.J.S.A. 17:30E-3(m) it is able to rescind the policy because: 1) plaintiff, Joseph Catton, did not possess a valid New Jersey Driver's License at the time the insurance was obtained;[1] and 2) the leased Porsche was registered in Florida and not in New Jersey.
*9 As previously stated, it is undisputed for the purpose of this opinion that any and all questions asked of plaintiffs when applying for the insurance policy were answered honestly. Moreover, neither the JUA, State Farm nor JUA's approved broker, R.S.A. Brokerage, ever inquired into where the subject automobile was registered. In addition, the policy itself does not make any reference to the statutory definition of qualified applicant.[2]
N.J.S.A. 17:30E-3(m) defines a "qualified applicant" as:
a person domiciled in New Jersey who is an owner of an automobile registered, or to be registered within 60 days of application, and principally garaged in this State, who has been refused coverage in the voluntary market, and who cannot be or is not placed in the voluntary market.... No person shall, however, be deemed a qualified applicant, if the principal operator of the automobile to be insured does not hold a driver's license which is valid in this State; or if a regular operator of the automobile other than the principal operator does not hold such a license....
Absent "explicit indication of a special meaning" words must be given their ordinary meaning. In re Barnert Memorial Hosp. Rates, 92 N.J. 31, 40, 455 A.2d 469 (1983). Accordingly, as defendant contends, plaintiffs do not qualify for coverage under the above provisions. However, plaintiffs maintain that because defendant failed to elicit the necessary information concerning eligibility, they were led to believe that they were properly covered. Therefore, we must determine which party bears the responsibility of making certain that only "qualified applicants" are provided coverage.
A "Senate Labor, Industry and Professions Committee Statement" was issued in connection with the statute. The first paragraph of the Statement explains the purpose of the statute. It states in pertinent part:

*10 The JUA, as the association [New Jersey Automobile Full Insurance Underwriting Association] is commonly called, was established by the Legislature in 1983 to supplant the Assigned Risk Plan for private passenger vehicles. It was designed to provide private passenger automobile insurance coverage at voluntary market rates for drivers who are unable to secure coverage in the voluntary market. This bill deals primarily with the governance, operations, and revenue of the association. [Id. (Emphasis added).]
The legislative statement indicates that the JUA is responsible for following the guidelines set forth in N.J.S.A. 17:30E-3(m). Further, N.J.S.A. 17:30E-9(b) provides that an insurance policy may issue only after the "servicing carrier determines that the applicant is a qualified applicant." Clearly, the legislative statement and the statutory provision when read together place the burden on the JUA, through its servicing carriers, to ascertain whether the applicant meets the qualifying provisions of the statute. Obviously, this can only be done through the application process. The servicing carrier, State Farm, failed to make the necessary inquiry in this case.
It is, we think, disingenuous for the JUA to argue that an applicant should be conversant with statutory provisions which are intended to regulate the JUA, not the applicant. The evidentiary presumption that everyone is presumed to know the statutory and regulatory law of the State is intended to apply only to those litigants whose conduct the statute or regulation was intended to regulate. Support for this conclusion is also found in Harr v. Allstate Ins. Co., 54 N.J. 287, 255 A.2d 208 (1969). In that case, the New Jersey Supreme Court recognized that insurance policies are "complex contracts of adhesion, prepared by the insuror ... [possessing] terms and provisions [which are] quite unintelligible to the insured even were he to attempt to read and understand their unfamiliar and technical language and awkward and unclear arrangement." Id. at 303, 255 A.2d 208. The court stressed that the insurer must obtain "through its representatives all information pertinent to the risk and the desired coverage before the contract is issued; and that it is likewise its obligation to make policy provisions, especially those relating to coverage, exclusions and vital conditions, *11 plain, clear and prominent to the layman." Id. at 304, 255 A.2d 208. Thus, it is firmly established that insurers must deal with applicants as laymen and not as experts in the ever changing law of underwriting. Id. Moreover, in Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 179 A.2d 505 (1962) the Court posited that, "[i]t would be unjust to visit the loss upon an insured whose good faith is unassailable, and to absolve a carrier which could have asked, but did not, for the facts it regards as material." Id. at 124, 179 A.2d 505. See also Portella v. Sonnenberg, 74 N.J. Super. 354, 360, 181 A.2d 385 (App.Div. 1962). While admittedly these cases apply to voluntary market policies, as opposed to JUA policies, we see no reason why the principles should not remain the same.
JUA's reliance on the recent case of Bidnick v. Hanover Ins. Co., 230 N.J. Super. 111, 552 A.2d 1023 (App.Div. 1989) is misplaced. In that case, we determined that an insurer could rescind an automobile insurance policy and rebate the insured's premiums after it discovered the insured had falsely represented that he was a New Jersey resident. Id. at 115, 552 A.2d 1023. The facts we are required to accept as true in this case, however, are vastly different from those in Bidnick. Here, plaintiffs did not make any misrepresentations.
Accordingly, the summary judgment entered in favor of defendant is reversed and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] This argument does not appear to have been a basis for defendant's argument below, although it is a disqualifier under N.J.S.A. 17:30E-3(m). However, as will be seen infra, the allegation is irrelevant, assuming plaintiff made no misrepresentations in obtaining the insurance.
[2] We assume that the policy included in plaintiffs' appendix, certified to be true by an agent of State Farm, is the policy issued to plaintiffs.